FILED

IN THE UNITED STATES DISTRICT COURT **2014 APR 15  AM 9:59**
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

CLERK US DISTRICT COURT
WESTERN DISTRICT OF TEXAS

BY_____
          DEPUTY

CRAIG JONES,
                              Movant,

-vs-                                                    Case No.  A-13-CA-659-SS
                                                        [No. A-11-CR-517-SS]
UNITED STATES OF AMERICA,
                              Respondent.

_____

## O R D E R

BE IT REMEMBERED on this day the Court reviewed the file in the above-styled cause, and specifically Movant Craig Jones's Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255 [#30], Respondent United States of America's Response [#33], Movant Jones's Reply [#34], and Respondent's Response to Order [#36].  Having considered the documents, the file as a whole, and the governing law, the Court enters the following opinion and orders DENYING the motion.

### Background

On September 20, 2011, Movant Craig Jones was charged in a one-count indictment with manufacturing and possession with intent to manufacture 100 or more marijuana plants in violation of 21 U.S.C. § 841(a)(1), (b)(1)(B), a Class B felony.  This offense carries a mandatory minimum sentence of 5 years and statutory maximum of 40 years.  *See* 21 U.S.C. § 841(b)(1)(B)(viii).  On September 6, 2012, Jones entered a plea of guilty to the one-count indictment pursuant to a plea agreement.  On November 17, 2012, this Court accepted Jones's guilty plea and sentenced him to a 26-month term of imprisonment, followed by a 4-year term of supervised release.  Jones received less than the mandatory minimum of 5 years because he met the criteria set forth in 18 U.S.C.

§ 3553(f)(1)–(5) and U.S.S.G. § 5C1.2(a), and therefore the Court could impose a sentence in accordance with the applicable guidelines without regard to any statutory minimum sentence. Jones's guideline range was 24–30 months, and the Court sentenced him to the low end of this range—pursuant to the Government's sentence recommendation in the plea agreement—when it imposed a 26-month sentence. *See* Plea Agreement [#15], at 7–8. Jones did not pursue a direct appeal of his conviction and sentence.

On August 5, 2013, Jones timely filed a Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255 [#30]. In this motion, Jones argues he was denied the effective assistance of counsel because his attorney failed to research the relevant legal issues and file a motion to suppress the evidence in his case. Specifically, law enforcement officers conducted a search of Jones's residence with a drug detection dog, and after the dog alerted to the existence of controlled substances in his residence, a search warrant was obtained the next day. Relying on the Supreme Court's recent opinion in *Florida v. Jardines*, 133 S. Ct. 1409 (2013), Jones contends the dog sniff was a search in violation of his Fourth Amendment rights, and the evidence seized from Jones's residence should have been excluded. According to Jones, if his lawyer had researched the issue, he would have learned the Supreme Court granted a writ of certiorari in *Jardines* in January 2012, meaning it was pending at the time Jones was arrested, entered his guilty plea, and was sentenced. The Supreme Court eventually issued the *Jardines* opinion on March 26, 2013, approximately four months after Jones was sentenced. If Jones's lawyer had been aware of *Jardines*, contends Jones, he would have filed a motion to suppress, which would have been granted in light of *Jardines*. Instead, according to Jones, his lawyer did not research the issue, told Jones such a motion would be frivolous, advised him that no Fourth Amendment violation occurred, and

convinced him to plead guilty because the evidence obtained against him was obtained completely legally.

**Analysis**

**I.       Legal Standard**

**A.       28 U.S.C. § 2255**

Generally, there are four grounds upon which a defendant may move to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255: (1) the imposition of a sentence in violation of the Constitution or the laws of the United States; (2) a lack of jurisdiction of the District Court that imposed the sentence; (3) the imposition of a sentence in excess of the maximum authorized by law; and (4) the sentence is otherwise subject to collateral attack.  28 U.S.C. § 2255; *United States v. Placente*, 81 F.3d 555, 558 (5th Cir. 1996).  Section 2255 is an extraordinary measure; it cannot be used for errors that are not constitutional or jurisdictional if those errors could have been raised on direct appeal.  *United States v. Stumpf*, 900 F.2d 842, 845 (5th Cir. 1990).  If the error is not of constitutional or jurisdictional magnitude, the movant must show the error could not have been raised on direct appeal and would, if condoned, "result in a complete miscarriage of justice."  *United States v. Smith*, 32 F.3d 194, 196 (5th Cir. 1994).  In addition, a defendant who raises a constitutional or jurisdictional issue for the first time on collateral review must show both "cause" for his procedural default, and "actual prejudice" resulting from the error. *Placente*, 81 F.3d at 558.

**B.       Ineffective Assistance of Counsel**

The United States Supreme Court's decision in *Strickland v. Washington* provides the familiar two-pronged test for establishing a claim of ineffective assistance of counsel:

> First, the defendant must show that counsel's performance was deficient.  This requires showing that counsel made errors so serious that counsel was not

functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable.

*Strickland v. Washington*, 466 U.S. 668, 687 (1984).

## II.    Application

Jones contends his lawyer was ineffective. He argues if his counsel had researched the law and filed a motion to suppress, the search warrant would have been deemed invalid, and the evidence obtained as a result of the search warrant would have been excluded. When considering the validity of a search warrant, the Court engages in a two step inquiry: (1) the Court must determine whether the good faith exception to the exclusionary rule applies; and (2) the Court must determine whether the warrant was supported by probable cause. *United States v. Payne*, 341 F.3d 393, 399 (5th Cir. 2003). The Court need not address the probable cause issue if the good faith exception applies and the case does not involve a "novel question of law." *Id.* at 399. Nevertheless, the Court addresses both prongs in this case, concluding: (1) there was probable cause regardless of whether the dog sniff is considered; and (2) the good faith exception applies.

## A.    Probable Cause Existed Even Without the Dog Sniff

Jones's claim of ineffective assistance fails because probable cause existed to obtain a search warrant without consideration of the dog sniff.

1.     **The Investigation and Search Warrant in Jones's Case**[1]

In May 2011, an Austin Police Department (APD) detective assigned to the Organized Crime Division Narcotics Team conducted routine electrical consumption queries using the City of Austin's Utility Database. *See* Gov't's Resp. to Order [#36-1], Ex. A (Affidavit for Search Warrant—Apple Orchard Lane), at 1. The detective had been a commissioned police officer with the APD for more than ten years and had been a detective for approximately four and a half years. *Id.* The detective had participated in numerous indoor marijuana cultivation investigations. *Id.*

As a result of the consumption queries, the detective determined the residence located at 5708 Apple Orchard Lane had higher than normal kilowatt consumption for May 2011 based on the size of the residence's living space. *Id.* at 1–2. Specifically, the residence used approximately 5,596 kilowatts for the May 2011 billing cycle. *Id.* at 2. The detective also determined that during the previous three billing cycles (February 2011 through April 2011), the average electrical consumption was approximately 5,181 kilowatts per month. *Id.* The detective then compared these numbers to those from one year earlier during the same time frame under a different account holder. *Id.* The detective discovered the electrical consumption was considerably lower the previous year. *Id.* Specifically, for the same three months (February 2010 to April 2010), the average electrical consumption was approximately 2,036 kilowatts per month. *Id.*

The detective also compared the consumption levels at 5708 Apple Orchard Lane to those of another house of similar appearance, size, and construction in the same neighborhood. *Id.*

---

[1] Neither party originally filed with the Court either the search warrant affidavits or the search warrants. Because the Court needed these documents to effectively address Jones's claims, it ordered the Government to supplement the record with the applicable search warrant affidavits and search warrants. *See* Order of April 9, 2014 [#35]. The Government timely complied, and these documents can be found in Docket Entry #36.

Specifically, this residence's average electrical consumption for the three billing cycles from February 2011 to April 2011 was 1,045 kilowatts per month, considerably lower than the 5,181 kilowatts per month being consumed at 5708 Apple Orchard Lane during the same time frame. *Id.*

Based on his training and experience, the detective knew this level of electrical consumption was consistent with a residence in which marijuana is being cultivated due to the use of high-intensity lights, fans, blowers, and other electrical equipment utilized in the process. *Id.*

The detective used the database to identify Craig Jones as the account holder for 5708 Apple Orchard Lane and conducted surveillance at the residence on several occasions. *Id.* In observing the house, the detective noticed coverings on the upstairs windows that did not appear to be blinds or curtains. *Id.* Based on his training and experience, the detective knew it was common for indoor marijuana growers to cover the windows to their grow rooms in order to regulate the amount of the marijuana plants' light exposure. *Id.* The detective also knew windows were covered to prevent escape of high intensity light produced by the metal halide and high-pressure sodium lights commonly used in indoor hydroponic marijuana cultivation. *Id.* Finally, the detective knew windows were covered to conceal from neighbors and law enforcement the existence of a marijuana growth operation. *Id.*

On May 17, 2011, the detective and another APD officer took a narcotics detection dog to 5708 Apple Orchard Lane for the purpose of conducting a sniff on the exterior of the residence. *Id.* They took the dog to the unobstructed front of the residence, and the dog gave a positive alert on the garage door. *Id.*

With this information, the detective prepared a probable cause affidavit, obtained a search warrant, and executed the warrant on May 18, 2011. Upon execution of the warrant, officers found

the residence showed no evidence of occupancy except for a single bed. *See* Presentence Investigation Report (PSR), ¶ 8. The residence did not have any furniture, food, or anything to suggest someone actually lived there. *Id.* There were large, medium, and small marijuana plants in three bedrooms, and there was an elaborate lighting, watering, and irrigation system that had been installed to promote growth. *Id.* Officers discovered a digital scale and mason jars containing small amounts of dried marijuana. *Id.* At the Apple Orchard residence, officers found a total of 140 marijuana plants and 13.54 ounces of dried, harvested marijuana. *Id.*

Paperwork found in the Apple Orchard residence indicated Jones rented and occupied the residence at 1200 Wilson Heights, Austin, Texas. *Id.* at ¶ 9. On May 18, 2011, officers obtained and executed another search warrant for the Wilson Heights residence and found 32 growing marijuana plants, 1.54 ounces of dry marijuana, $2,762 in U.S. currency, various pharmaceuticals and illegal drugs, a scale, packaging materials, and drug tally sheets. *Id.*

**2.     The Investigation and Search Warrant in *Jardines***

In *Jardines*, law enforcement received an unverified tip that marijuana was being grown in Defendant Jardines's home. *Jardines*, 133 S. Ct. at 1413. One month later, law enforcement went to conduct surveillance at Jardines's home. *Id.* The officers saw no vehicles in the driveway or activity around the home, and they could not see inside because the blinds were drawn. *Id.* After fifteen minutes, officers along with a drug-sniffing dog approached the front porch of the home, and the dog subsequently gave a positive alert for narcotics after sniffing the base of the front door. *Id.* On these facts, a search warrant was obtained and executed the same day, and the search revealed marijuana plants. *Id.*

At trial Jardines moved to suppress the marijuana plants on the grounds the canine investigation was an unreasonable search, and the trial court granted his motion. *Id.* On appeal, the appellate court reversed the trial court's decision, but the Florida Supreme Court quashed the appellate court's reversal, reinstating the trial court's decision. *Id.* The United States Supreme Court granted certiorari on the question of whether the officers' behavior was a search within the meaning of the Fourth Amendment. *Id.* at 1414. The Court ultimately held "[t]he government's use of trained police dogs to investigate the home and its immediate surroundings is a 'search' within the meaning of the Fourth Amendment." *Id.* at 1417–18.

### 3.   Comparing Jones's Case to *Jardines*

In light of *Jardines*, the dog search in Jones's case would almost surely be considered a warrantless search in violation of the Fourth Amendment.[2] There is an important difference, though, between *Jardines* and this case. In *Jardines*, the dog sniff was the critical element underpinning the probable cause finding for the search warrant. In contrast, the investigation in this case provided facts to support probable cause independent of the dog sniff on May 17, 2011.

A valid search warrant may be issued only upon a finding of probable cause. *United States v. Perez*, 484 F.3d 735, 740 (5th Cir. 2007) (citing *United States v. Brown*, 941 F.2d 1300, 1302 (5th Cir. 1991)). A probable cause determination for the issuance of a search warrant is a "'practical,

---

[2]In *Jardines*, the dog alerted at the front door of the residence while in the instant case, the dog sniff was arguably less intrusive because it alerted at the garage door. Nevertheless, the reasoning in *Jardines* strongly suggests the dog sniff in this case would qualify as a search because the Court was concerned with police-trained, drug-sniffing dogs "investigat[ing] the home *and its immediate surroundings*." *Jardines*, 133 S. Ct. at 1417–18 (emphasis added). Moreover, the United States seems to concede the dog sniff was a warrantless search. *See* Resp't's Resp. [#33], at 4 ("Jones notes in his motion at 1 that on May 17, 2011, officers of the Austin Police Department (APD) conducted a warrantless search of his residence using a drug detection dog."). Therefore, for the purposes of this order, the Court assumes the dog sniff on May 17, 2011, qualifies as a warrantless search in violation of Jones's Fourth Amendment rights.

common-sense decision as to whether, given all the circumstances set forth in the affidavit, there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" *United States v. Cavazos*, 288 F.3d 706, 710 (5th Cir. 2002) (quoting *United States v. Byrd*, 31 F.3d 1329, 1340 (5th Cir. 1994)). A police officer seeking the issuance of a search warrant must present an affidavit containing facts sufficient to "'provide the magistrate with a substantial basis for determining the existence of probable cause.'" *Kohler v. Englade*, 470 F.3d 1104, 1109 (5th Cir. 2006) (quoting *Illinois v. Gates*, 462 U.S. 213, 239 (1983)). A magistrate's determination is entitled to deference by reviewing courts. *Perez*, 484 F.3d at 741. In analyzing a magistrate's decision to issue a search warrant, a court "start[s] with the general proposition that a search warrant, unlike an arrest warrant, may issue, without the slightest clue to the identity of the criminal, if there is probable cause to believe that the fruits, instrumentalities, or evidence of criminal activity are located at the place to be searched." *United States v. Webster*, 750 F.2d 307, 318 (5th Cir. 1984).

A Fourth Amendment violation may be established if the defendant proves, by a preponderance of the evidence, that the supporting affidavit for a search warrant contains a false, material statement made intentionally or with reckless disregard for the truth. *United States v. Alvarez*, 127 F.3d 372, 373–74 (5th Cir. 1997). If the defendant carries this burden, the court "must excise the offensive language from the affidavit and determine whether the remaining portion establishes probable cause." *Id.* (citing *Franks v. Delaware*, 438 U.S. 154, 171–72 (1978)). Similarly, a search warrant is not rendered invalid if, putting aside the unconstitutional portions of a search warrant, the remaining information is sufficient to establish probable cause. *See United States v. Karo*, 468 U.S. 705, 719–21 (1984) (citing *Franks*, 438 U.S. at 172); *see also Wright v. State*, 401 S.W.3d 813, 822–23 (Tex. App.—Houston [14th Dist.] 2013, no pet.); *Castillo v. State*,

818 S.W.2d 803, 805 (Tex. Crim. App. 1991), *overruled on other grounds by Torres v. State*, 182 S.W.3d 899, 901–02 (Tex. Crim. App. 2005).

In *Jardines*, the factors underlying the probable cause finding by the magistrate were: (1) an unverified tip from a month prior to the dog sniff and application for warrant; and (2) the dog sniff. Excising the dog sniff from the equation, a mere unverified tip that marijuana was being grown would be insufficient for a probable cause finding. In Jones's case, however, the factors supporting probable cause were: (1) a substantial increase in electricity consumption compared to (a) the same period of time from the previous year with different residents, and (b) another house in the neighborhood of comparable size; (2) surveillance conducted at the house on several occasions; (3) the observation of window coverings that did not appear to be blinds or curtains and that are common to marijuana grow houses; and (4) the dog sniff. Excising the dog sniff from this equation, there are still sufficient facts upon which a magistrate could have concluded there was a fair probability that contraband or evidence of a marijuana grow operation would be found in the Apple Orchard residence.

The detective with a decade of experience specifically noted the window coverings did not appear to be blinds or curtains but rather were the sort of coverings used in hydroponic grow operations to entirely block light from intruding into the house and disturbing the "photoperiod" of the marijuana plants. In *Jardines*, the officers observed blinds on the house, and this fact appeared to be relevant only to the extent it prevented officers from seeing inside. *Jardines*, 133 S. Ct. at 1413. While the Supreme Court in *Jardines* only held the dog sniff was a search and did not specifically hold there were not sufficient facts, without the dog sniff, to support probable cause, this conclusion is implicit in the Court's decision. First, the Court affirmed the Florida Supreme Court's

opinion, which suppressed the marijuana found at the residence.  *Id.* at 1417–18.  Second, the

Court's reasoning indicated the dog sniff was the necessary element to the probable cause finding.

*Id.* at 1417 ("That the officers learned what they learned *only by physically intruding on Jardines'*

*property to gather evidence* is enough to establish that a search occurred.") (emphasis added).  In

Jones's case, the narcotics detective learned what he learned through careful analysis of Jones's

utility records and kilowatt consumption as well as surveillance performed on several occasions

revealing the windows of the house were blacked out in a manner consistent with a hydroponic grow

operation.  The subsequent dog sniff supplemented—but was not necessary to—the finding of

probable cause.

Therefore, Jones fails to establish his counsel was deficient for not filing a motion to

suppress based on the warrantless dog search because there were sufficient facts and circumstances

to support the magistrate's finding of probable cause even without consideration of the dog sniff.

Similarly, Jones cannot show prejudice because if the motion had been filed, it would have been

denied.  Indeed, this Court denied a very similar motion to suppress in January 2012, after the

Supreme Court granted certiorari in *Jardines*.  *See United States v. Nagy*, No. 1:11-CR-646-SS,

Order [#41] at 4–6 (W.D. Tex. Jan. 27, 2012) (order denying motion to suppress).[3]  Therefore,

---

[3]In *Nagy*, the probative facts supporting the search warrant were: (1) the detective's observation of Nagy at a store characterized as a "marijuana grow shop"; (2) the detective's observation that Nagy apparently made purchases at said store; (3) the detective following Nagy from the store to his residence; (4) Nagy's prior arrests for possession of marijuana; (5) high energy use at the residence; and (6) a drug-sniffing dog giving a positive alert at Nagy's garage door. *See United States v. Nagy*, No. 1:11-CR-646-SS, Order [#41] at 7 (W.D. Tex. Jan. 27, 2012) (order denying motion to suppress).  This Court denied Nagy's motion to suppress, concluding: (1) the dog sniff was not a search under then-existing precedent in the Fifth Circuit (while noting the pendency of *Jardines* at the Supreme Court); (2) even if the dog sniff was a search, the evidence should not be suppressed because law enforcement acted in objective good faith reliance on the search warrant; and (3) the probative facts supporting the search warrant gave rise to probable cause regardless of whether the dog alert was considered. *Id.* at 4–7.  On appeal, the Fifth Circuit held the dog sniff was a search in light of *Jardines*, but affirmed this Court's order on the alternative ground that the warrant was supported by probable cause even if the information revealed by the dog sniff was not taken into account. *See United States v. Nagy*, 524 F. App'x 958, 959 (5th Cir. 2013) (unpublished).

Jones's claim of ineffective assistance of counsel fails.

**B.      Good Faith Exception**

In addition, law enforcement conducted the search on May 18, 2011, in objectively reasonable reliance on the search warrant, and therefore the good faith exception applies. Accordingly, despite the Fourth Amendment violation, the exclusionary remedy would not apply in Jones's case even if his lawyer had filed a motion to suppress.

**1.      History of the Good Faith Exception**

In a line of cases beginning with *United States v. Leon*, 468 U.S. 897 (1984), the Supreme Court "recalibrated [the] cost-benefit analysis in exclusion cases to focus the inquiry on the 'flagrancy of the police misconduct' at issue." *Davis v. United States*, 131 S. Ct. 2419, 2427 (2011) (citing *Leon*, 468 U.S. at 909, 911). The Supreme Court summarized the reasoning of *Leon* and its progeny as follows:

> The basic insight of the *Leon* cases is that the deterrence benefits of exclusion "var[y] with the culpability of the law enforcement conduct" at issue. [*Herring v. United States*, 555 U.S. 135, 143 (2009)]. When the police exhibit "deliberate," "reckless," or "grossly negligent" disregard for Fourth Amendment rights, the deterrent value of exclusion is strong and tends to outweigh the resulting costs. [*Id.* at 144]. But when the police act with an objectively "reasonable good-faith belief" that their conduct is lawful, [*Leon*, 468 U.S. at 909] (internal quotation marks omitted), or when their conduct involves only simple, "isolated" negligence, [*Herring*, 555 U.S. at 137], the "'deterrence rationale loses much of its force,'" and exclusion cannot "pay its way." [*See Leon*, 468 U.S. at 919, 908, n.6 (quoting *United States v. Peltier*, 422 U.S. 531, 539 (1975))].

*Davis*, 131 S. Ct. at 2427–28.

The Supreme Court has expanded the reach of *Leon* and the good faith exception. In *Leon*, the Court held the exclusionary rule does not apply when the police conduct the search in "objectively reasonable reliance" on a warrant later held invalid, and the error rested with the

magistrate judge, not the police officer. *Leon*, 468 U.S. at 922.  In *Illinois v. Krull*, 480 U.S. 340 (1987), the Court held the exclusionary remedy did not apply when the police conducted the search in reasonable reliance on subsequently invalidated statutes. *Id.* at 349–50.  In *Arizona v. Evans*, 514 U.S. 1 (1995), the Court held the exclusionary rule did not apply when the police reasonably relied on erroneous information concerning an arrest warrant in a database maintained by judicial employees. *Id.* at 14.  In *Herring*, the Court expanded *Evans* to an instance where police employees erred in maintaining records in a warrant database. *Herring*, 555 U.S. at 137.

Most recently, and most relevantly to the instant case, the Supreme Court applied the good faith exception where the police conducted a search in objectively reasonable reliance on binding appellate precedent. *Davis*, 131 S. Ct. at 2434.  In *Davis*, police officers conducted a traffic stop that eventually resulted in the arrests of the driver for driving while intoxicated, and the passenger (Davis) for giving a false name to police. *Id.* at 2425.  The two were handcuffed and placed in the back of separate patrol cars. *Id.*  The police then searched the passenger compartment of the car and found a revolver inside Davis's jacket pocket. *Id.*  This search complied with then-existing Eleventh Circuit precedent, which had interpreted the Supreme Court's decision in *New York v. Belton*, 453 U.S. 454, 459–60 (1981) "to authorize automobile searches incident to arrests of recent occupants, regardless of whether the arrestee in any particular case was within reaching distance of the vehicle at the time of the search." *Davis*, 131 S. Ct. at 2424 (internal citation omitted).

Davis filed a motion to suppress the gun evidence in his case while acknowledging the officers' search fully complied with then-existing circuit precedent, and as expected, the district court denied his motion. *Id.* at 2426.  Davis raised the Fourth Amendment challenge to preserve the issue for review, and while his appeal was pending, the Supreme Court issued its opinion in *Arizona*

*v. Gant*, 556 U.S. 332 (2009), which adopted a new, two-part rule under which an automobile search incident to a recent occupant's arrest constitutional (1) if the arrestee is within reaching distance of the vehicle during the search, or (2) if the police have reason to believe the vehicle contains evidence relevant to the crime of arrest.  *Davis*, 131 S. Ct. at 2425–26 (citing *Gant*, 556 U.S. at 344).

On appeal, the Eleventh Circuit applied *Gant* and held the search incident to Davis's arrest violated his Fourth Amendment rights.  *Davis*, 131 S. Ct. at 2426.  The Eleventh Circuit, however, did not apply the exclusionary remedy because "penalizing the [arresting] officer for following binding appellate precedent would do nothing to dete[r] . . . Fourth Amendment violations."  *Id.* (internal quotations omitted).  Therefore, the Eleventh Circuit affirmed the district court's denial of Davis's motion to suppress.  *Id.*

The Supreme Court affirmed the Eleventh Circuit's decision and emphasized the exclusionary rule's purpose of deterring police misconduct.  *Id.* at 2434.  The Court reasoned that when an officer "has scrupulously adhered to governing law" by acting in objective reasonable reliance on binding appellate precedent, "[e]xcluding evidence in such cases deters no police misconduct and imposes substantial social costs."  *Id.*

### 2.    Officers' Conduct was in Compliance with Existing Fifth Circuit Precedent

Because the dog sniff occurred on May 17, 2011, prior to the *Jardines* opinion, the question is: what was the state of then-existing law in the Fifth Circuit concerning dog sniffs and the Fourth Amendment?  While the Fifth Circuit had not previously addressed the precise question of whether a dog sniff of a residence and its curtilage constituted a "search," the principles adopted by the Fifth Circuit and in district courts within the Fifth Circuit strongly indicate the dog sniff in Jones's case was not a "search" under then-existing law.

-14-

In *United States v. Goldstein*, 635 F.2d 356 (5th Cir. 1981), the Fifth Circuit held using a drug-detection dog to sniff around the exterior of a person's luggage after it was removed from an airline luggage cart was not an intrusion into a protected area. *Id.* at 360–61; *see also United States v. Place*, 462 U.S. 696, 706 (1983) (commenting that a dog sniff is "limited both in the manner in which the information is obtained and in the content of the information revealed by the procedure"); *United States v. Jacobsen*, 466 U.S. 109, 123 (1984) (finding a possessor of contraband can maintain no legitimate expectation that its presence will not be revealed, i.e., there is no legitimate interest in privately possessing contraband). Similarly, the Fifth Circuit held canine sniffs of lockers in public hallways and cars in public parking lots did not constitute a search. *See Horton v. Good Creek Indep. Sch. Dist.*, 690 F.2d 470, 477, 479 (5th Cir. 1982). The Fifth Circuit applied the same reasoning in holding a dog sniff of the exterior of a vehicle is not a search. *United States v. Seals*, 987 F.2d 1102, 1106 (5th Cir. 1993); *United States v. Hernandez*, 976 F.2d 929, 930 (5th Cir. 1992) (same). In an unpublished opinion, the Fifth Circuit held the dog sniff of an outer edge of a garage and the dryer vent on the exterior wall of the house did not occur on the protected curtilage, and therefore was not a search. *See United States v. Tarazon-Silva*, 166 F.3d 341, at *1 (5th Cir. 1998) (unpublished).

District courts within the Fifth Circuit addressing the issue of dog sniffs of buildings and residences pre-*Jardines* consistently found these sniffs not to be searches. *See United States v. Olivas*, No. 3:09-CR-1402-KC, 2009 WL 2169893, at *6 (W.D. Tex. July 17, 2009) (holding dog sniff of the exterior of a commercial building was not a search); *United States v. Cota-Lopez*, 358 F. Supp. 2d 579, 592 (W.D. Tex. 2002) (holding dog sniff outside the front door of a private residence was not a search); *United States v. Tarazon-Silva*, 960 F. Supp. 2d 1152, 1162 (W.D. Tex.

-15-

1997) (holding dog sniff of the outer edge of garage and the dryer vent on the exterior wall of house was not a search).

Indeed, this very Court—the one which would have handled Jones's motion to suppress if his lawyer had filed one—has denied motions to suppress in very similar factual scenarios, relying on Fifth Circuit guidance to conclude the dog sniffs at issue were not searches under the Fourth Amendment. *See United States v. Nagy*, No. 1:11-CR-646-SS, Order [#41] at 4–6 (W.D. Tex. Jan. 27, 2012) (holding dog sniff of garage was not a search); *United States v. Bacon*, No. A-06-CR-251-SS, Order [#48] at 3–7 (W.D. Tex. Dec. 12, 2006) (holding dog sniff of the front door of a residence was not a search).

Finally, the Court notes the decision of a sister district court which recently addressed a motion to suppress post-*Jardines* where the dog sniff of the front door of a residence and the garage door occurred pre-*Jardines*. *See United States v. Nguyen*, No. 4:13-CR-48, 2013 WL 5488719 (E.D. Tex. Oct. 2, 2013). In applying the good faith exception, as interpreted in *Davis*, the court concluded the exclusionary remedy should not apply because: "Although the canine sniff search in this case turned out to be unconstitutional under *Jardines*, the Court finds that the officers' conduct was in compliance with existing Fifth Circuit precedent and not culpable in any way." *Id.* at *4.

Given the state of Fifth Circuit law at the time the officers conducted the dog sniff of Jones's garage door, the Court concludes the good faith exception would have applied if a motion to suppress had been filed. The officers acted in objectively reasonable reliance on then-existing, binding appellate precedent, and therefore the exclusionary remedy would not have applied even though the canine sniff was a search in violation of Jones's Fourth Amendment rights.

-16-

The Court is aware there was no binding appellate precedent on the *precise* issue of dog sniffs of residences and their curtilage, which perhaps calls into question whether the *Davis* good faith exception applies. In *Davis*, the defendant conceded the officers acted in compliance with then-existing precedent when they searched the vehicle incident to his arrest. *See Davis*, 131 S. Ct. at 2426. Moreover, in her concurring opinion, Justice Sotomayor specifically cabined her support for the majority's holding to instances where "binding appellate precedent specifically *authorize[d]* a particular police practice," and noted "[t]his case does not present the markedly different question whether the exclusionary rule applies when the law governing the constitutionality of a particular search is unsettled." *Id.* at 2435 (Sotomayor, J., concurring). Similarly, in his dissent, Justice Breyer, joined by Justice Ginsburg, expressed the same concerns, arguing the majority's holding lacked workability because "to apply the term 'binding appellate precedent' often requires resolution of complex questions of degree." *Id.* at 2437 (Breyer, J., dissenting).

These concerns are well-taken considering the Court, in analyzing this very case, has been forced to determine the state of Fifth Circuit precedent at the time of the dog sniff at issue and to resolve complex questions of degree. In the end, however, the Court concludes Fifth Circuit precedent at the time of the dog sniff provided overwhelming support in favor of concluding the canine sniff was not a search. Excluding the evidence in such a case would deter no police misconduct, impose substantial social costs, and therefore the exclusionary rule would not apply. *See Davis*, 131 S. Ct. at 2434.

Therefore, Jones fails to establish his counsel was deficient for not filing a motion to suppress based on the warrantless dog search because officers acted in objectively reasonable reliance on

-17-

binding appellate precedent, and the good faith exception applies.  Similarly, Jones cannot show prejudice because if the motion had been filed, it would have been denied.

## Certificate of Appealability

An appeal may not be taken to the court of appeals from a final order in a proceeding under § 2255 "unless a circuit justice or judge issues a certificate of appealability."  28 U.S.C. § 2253(c) (1)(A).  Pursuant to Rule 11 of the Federal Rules Governing Section 2255 Proceedings, effective December 1, 2009, the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant.

A certificate of appealability may issue only if a movant has made a substantial showing of the denial of a constitutional right.  28 U.S.C. § 2253(c)(2).  The Supreme Court fully explained the requirement associated with a "substantial showing of the denial of a constitutional right" in *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  In cases where a district court rejected a movant's constitutional claims on the merits, "the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  *Id.*  "When a district court denies a habeas petition on procedural grounds without reaching the petitioner's underlying constitutional claim, a COA should issue when the petitioner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling."  *Id.*

In this case, reasonable jurists could debate the denial of Jones's § 2255 motion, and find that the issues presented are adequate to deserve encouragement to proceed.  *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack*, 529 U.S. at 484).  The Court so concludes because there is no

-18-

Fifth Circuit precedent clearly deciding either of the issues in this case.  First, there is no Fifth Circuit precedent the Court is aware of holding the facts and circumstances described in the search warrant affidavit for the Apple Orchard residence are sufficient for a finding of probable cause, excluding consideration of the dog sniff.  Second, concerning the applicability of the good faith exception, the state of Fifth Circuit law at the time of the dog sniff on May 17, 2011, is not absolutely clear.  Moreover, the issue left open by the Supreme Court in *Davis*—whether the exclusionary rule applies when the law governing the constitutionality of a particular search is unsettled at the time the search occurs—has not been addressed by the Fifth Circuit.  Accordingly, a certificate of appealability shall be issued.

## Conclusion

Jones contends his lawyer was ineffective for failing to research the law and file a motion to suppress the evidence in his case due to the dog sniff conducted at his residence in violation of his Fourth Amendment rights.  Jones's claim fails, however, because: (1) the facts and circumstances support a finding of probable cause without consideration of the dog sniff; and (2) the officers acted in objective good faith reliance on then-existing precedent.  Therefore, assuming Jones's counsel was aware of the pending *Jardines* case at the Supreme Court, it was not deficient performance for his counsel to choose, as a matter of strategy, not to file a motion to suppress that would be denied. Furthermore, even assuming Jones's counsel was unaware of the *Jardines* case, Jones cannot show prejudice because his motion would have failed for the reasons described above.  Under these circumstances, the Court concludes Jones was not deprived the effective assistance of counsel.

Accordingly,

IT IS ORDERED that Movant Craig Jones's Motion to Vacate, Set Aside, or Correct

Sentence under 28 U.S.C. § 2255 [#30] is DENIED;

IT IS FINALLY ORDERED that a certificate of appealability is GRANTED.

SIGNED this the _14th_ day of April 2014.

SAM SPARKS
UNITED STATES DISTRICT JUDGE